IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT H.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 6307 |
| v. | ) | |
| | ) | Magistrate Judge |
| MARTIN J. O'MALLEY, | ) | Daniel P. McLaughlin |
| Commissioner of Social Security,[2] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Robert H.'s claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse or remand the Commissioner's decision [17] is denied, and the Commissioner's cross-motion for summary judgment [21] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Martin J. O'Malley has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

On July 30, 2014 and April 8, 2016, respectively, Plaintiff filed claims for DIB and SSI, alleging disability since December 31, 2013 (later amended to July 30, 2014). An Administrative Law Judge ("ALJ") denied Plaintiff's claims on January 13, 2017 and then again on February 27, 2018. Plaintiff appealed and the United States District Court for the Northern District of Illinois remanded the matter on October 3, 2019 pursuant to an agreed remand. An ALJ then issued a partially favorable decision on September 30, 2020, finding that Plaintiff was not disabled prior to July 29, 2019, but became disabled on that date when his age category changed. Plaintiff again appealed and the Court again remanded the matter on December 6, 2021 pursuant to an agreed remand. The Social Security Administration Appeals Council then issued a remand order dated February 21, 2022.

An ALJ held a telephonic remand hearing on June 16, 2022. Plaintiff appeared and testified at the hearing and was represented by counsel. A medical expert ("ME") and a vocational expert ("VE") also testified. On July 20, 2022, the ALJ again denied Plaintiff's claims for benefits, finding him not disabled under the Social Security Act for the period of July 30, 2014 through July 28, 2019. As the matter had already been remanded twice, Plaintiff did not seek review from the Appeals Council, leaving the ALJ's July 20, 2022 decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. §

2

405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); 20 C.F.R. § 404.984

## II. ALJ DECISION

In the ALJ's July 20, 2022 decision, which considered the period prior to July 29, 2019, Plaintiff's claims were analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date of July 30, 2014. At step two, the ALJ concluded that Plaintiff had the following severe impairments: diabetes mellitus; renal failure; depression; gout; obesity; aneurysm; and degenerative disc disease. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC"): can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in the total amount of time he is able to sit, stand, or walk throughout an 8-hour workday; needs to alternate his position between sitting, standing, and walking for no more than one or two minutes out of every half hour and, while doing so, he would not need to be off task; can occasionally climb ramps and stairs, and can occasionally stoop, kneel, balance, crouch, and crawl, but can never climb ladders, ropes, or scaffolds; can perform gross manipulation no more than occasionally, and is incapable of forceful

3

grasping or torquing; is not limited in his ability to perform fine manipulation; is limited to working in non-hazardous environments, *i.e.*, no driving at work, operating moving machinery, working at unprotected heights, and should avoid concentrated exposure to unguarded hazardous machinery; is limited to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment; is not capable of multitasking or work requiring considerable self-direction; can work at an average production pace, but not at a significantly above average or highly variable pace; is precluded from work involving direct public service, in person or over the phone, although he can tolerate brief and superficial interaction with the public which is incidental to his primary job duties; is unable to work in crowded, hectic environments; and can tolerate brief and superficial interaction with supervisors and co-workers, but is not to engage in tandem tasks.

At step four, the ALJ determined that Plaintiff would be unable to perform his past relevant work as a warehouse supervisor. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could have performed jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act for the period of July 30, 2014 through July 28, 2019.

## DISCUSSION

I.     **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

5

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow

6

. . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Id.* at 1054 (citations and internal quotations omitted). Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ failed to properly evaluate the effects of Plaintiff's obesity; (2) the ALJ failed to properly assess Plaintiff's work-related mental functioning; (3) the ALJ erred in determining there was no need for an updated consultative examination; (4) the ALJ failed to conduct a proper assessment of Dr. Tavel's opinions; and (5) the ALJ erred in assigning great weight to the ME's testimony. Plaintiff also contends that the matter should be reversed for an award of benefits rather than remanded. Each argument will be addressed below in turn.

## A.     Import of the Appeals Council's Remand Order

As an initial, overarching matter, the Court notes that Plaintiff couches his arguments in terms of the remand order of the Appeals Council. Along those lines, Plaintiff contends that "[t]he ALJ failed to correct the errors cited in the prior remand order." ([17] at 9.) This is generally a flawed approach, because "an ALJ's failure to follow the directive of the Appeals Council on remand is not an independent basis to overturn the new decision, as long as that decision is supported by substantial evidence." *Thomas C. v. Kijakazi*, No. 20 C 6678, 2023 WL 4665367, at *3 (N.D. Ill. July 20, 2023); *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011) ("The question whether the ALJ complied with the Appeals Council's remand order is not, in the final analysis, of independent importance. The only question properly before us is whether the ALJ's decision . . . is supported by substantial evidence."). Accordingly, irrespective of the Appeals Council's remand order, the ultimate question before this Court is whether the ALJ's 29-page July 20, 2022 decision is properly supported by substantial evidence. *See* 42 U.S.C. § 405(g). The Court must consider Plaintiff's arguments in the context of that inquiry.

## B.     The ALJ's Consideration of Plaintiff's Obesity

Plaintiff contends that the ALJ did not sufficiently account for his obesity. ([17] at 10-11.) However, the ALJ did consider Plaintiff's obesity throughout his decision. The ALJ first noted that "[a]lthough the claimant is obese, he is able to perform activities of daily living and has good range of motion." (R. 5599.) The ALJ expressly took into consideration that "[t]he combined effects of obesity with other

8

impairments may be greater than might be expected without obesity." (*Id.*) In a dedicated passage, the ALJ assessed Plaintiff's obesity as follows:

> The claimant has morbid obesity with no neurological deficits. On August 11, 2016, he was 5 feet 7.5 inches tall and weighed 320 pounds with a body mass index (BMI) of 49.38. He was advised to diet, exercise, and lose weight. However, until recently, he did not make much effort to lose weight and tended to not diet or exercise. On February 10, 2017, the claimant weighed 334 pounds with BMI of 51.54. Claimant was advised to diet, exercise, and lose weight. No doctor opined that the claimant was unable to diet and exercise. I have considered the claimant's obesity both singularly as well as in combination with his other impairments, and I note that the climbing restrictions as well as postural limitations are consistent with his mobility challenges attributable to this condition. His obesity did not affect his ability to sit, stand, or walk, especially if allowed to briefly alternate his position as found herein. His obesity was accommodated by the above light residual functional capacity and additional postural limitations.

(*Id.* at 5603 (citations omitted).)

The Court finds that the ALJ's consideration of Plaintiff's obesity was sufficient. A fundamental problem for Plaintiff is that he does not specifically explain, beyond generalizations, how his obesity impacts his other impairments. Rather, Plaintiff asserts that obesity "*may* contribute to limitation of the range of motion of the skeletal spine and extremities" and "*can* affect an individual's ability to sustain both physical and mental functioning over time." ([17] at 10 (emphasis added).) These generalized assertions are unavailing, because Plaintiff does not specifically "explain how [his] obesity exacerbated [his] underlying impairments." *Shumaker v. Colvin*, 632 F. App'x 861, 867 (7th Cir. 2015); *Tanitria C. v. Saul*, No. 19 CV 1884, 2021 WL 1577795, at *9 (N.D. Ill. Apr. 22, 2021) ("Given that the ALJ expressly considered Claimant's obesity in connection with her other impairments and complaints, Claimant's argument that the ALJ failed to properly account for

9

her obesity lacks merit. Notably, other than general speculations that morbid obesity can, of course, interact with other impairments to limit physical functions, Claimant has failed to cite to any record evidence showing how her obesity specifically limits her ability to perform work related activities to a greater degree than the ALJ recognized."). Furthermore, as pointed out by Defendant (and not rebutted by Plaintiff in his reply), the ALJ relied on two medical experts and the State agency reviewing physicians in evaluating the effect Plaintiff's obesity had on his ability to function in a work environment, and all four physicians opined that Plaintiff's obesity did not prevent him from engaging in a range of light exertional work. Ultimately, the Court must disagree with Plaintiff that the ALJ's assessment of his obesity was "perfunctory" or "boilerplate," and instead finds that the ALJ's evaluation of Plaintiff's obesity was supported by substantial evidence.

### C.     The ALJ's Assessment of Plaintiff's Mental Functioning

Plaintiff takes issue with the ALJ's step three findings as to his mental impairments. ([17] at 11.) In his step three analysis, the ALJ assessed the "paragraph B" criteria, namely, Plaintiff's impairments in the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. The ALJ concluded that Plaintiff had moderate limitations in each of these domains. (R. 5599-5600.) Despite Plaintiff's protestations of error, the ALJ provided a well-reasoned 2-page analysis of the paragraph B criteria that considered the record evidence and reasonably concluded

10

that the evidence supported the findings that Plaintiff had at most moderate limitations in the functional areas. Considering the ALJ's fulsome analysis, the Court finds no issues with the ALJ's assessment of the paragraph B criteria that would require remand. *See Meghan S. v. Kijakazi*, No. 20 C 1592, 2021 U.S. Dist. LEXIS 172594, at *8-9 (N.D. Ill. Sep. 13, 2021); *Elizabeth A. v. Saul*, No. 19 C 6024, 2021 U.S. Dist. LEXIS 8348, at *11 (N.D. Ill. Jan. 15, 2021).

Plaintiff also maintains that the ALJ's RFC assessment does not sufficiently account for his limitations in concentration, persistence, or pace. In finding that Plaintiff was not more than moderately limited in that functional area, the ALJ reasoned, *inter alia*, that Plaintiff was able to drive and handle his own finances, was generally alert and oriented with intact memory, and had cognition within normal limits. (R. 5600.) As set forth above, the ALJ provided various RFC accommodations for Plaintiff's mental deficits, including limiting Plaintiff to simple, routine tasks, work involving no more than simple decision-making, work requiring the exercise of only simple judgment, work not involving an above average pace, and work not involving hectic environments. (*Id.* at 5601.) Despite these multiple accommodations, Plaintiff argues that "limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate . . . difficulties [with concentration]." ([17] at 12.)

Plaintiff's argument in that regard fails for several reasons. As an initial matter, the ALJ went well beyond limiting Plaintiff to only "simple" tasks to accommodate his mental impairments. Furthermore, an ALJ's use of catchall

11

phrases (such as "simple, routine tasks") in an RFC, without more, does not necessitate remand. *See Recha v. Saul*, 843 F.App'x 1, 4 (7th Cir. 2021) (noting that the use of boilerplate language, by itself, is not reversible error). Moreover, crucially, Plaintiff has not articulated what sort of verbiage the ALJ should have used with respect to his asserted limitations with concentration. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("Although [the claimant] complains that the pace requirements are too vague, there is only so much specificity possible in crafting an RFC. The law required no more."). Accordingly, Plaintiff's challenge regarding concentration, persistence, and pace must fail. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none."). The Court finds Plaintiff's perfunctory, undeveloped arguments concerning psychotropic medications and mini-mental status examinations – tacked on to his concentration-based arguments – have been waived. *See Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) ("It is well established in our precedents that 'skeletal' arguments may be properly treated as waived.") (citation omitted). Ultimately, the Court concludes that Plaintiff's arguments concerning his mental functioning are unavailing.

  **D.** **The Necessity of an Updated Consultative Examination**

  Pointing to the Appeals Council's remand order, Plaintiff argues that the ALJ erred in not ordering an updated consultative examination. ([17] at 13-14.) The ALJ explained as follows regarding his reasoning on that issue:

12

> I expressly determine that no additional consultative examination is warranted at this point. No new consultative examination is needed due to the remote period and lengthy record. The medical evidence in the claimant's file is quite extensive. The record is certainly sufficiently developed to allow me to issue a well-reasoned decision for the period at issue. The period at issue [is] for the period on and before July 28, 2019, and a current consultative examination would not reflect the claimant's condition for that period of time at issue. A new consultative examination would not provide additional information as to a remote period more probative than the medical expert testimony. This was explained to the claimant's attorney at the hearing who offered no objection.

(R. 5616.) The Appeals Council's remand order directed the ALJ to "*[c]onsider* whether an updated consultative examination is also warranted." (*Id.* at 5727 (emphasis added).) The ALJ did precisely that, and his well-reasoned decision not to order an updated consultative examination does not provide a basis for remand.

E.     **The ALJ's Evaluation of Dr. Tavel's Opinion**

Plaintiff asserts that, "[t]hough he purported to conduct a more proper assessment of Dr. Tavel's opinion, the ALJ failed to properly support his conclusion." ([17] at 15.) The Court disagrees. In his decision, the ALJ explained that he gave great weight to the opinions of Dr. Tavel, "a cardiologist and internist, who testified at the January 25, 2018 hearing." (R. 5612.) The ALJ analyzed Dr. Tavel's findings and opinions at length and concluded that Dr. Tavel's testimony "was persuasive and supported by the evidence of record for the period at issue." (*Id.* at 5612-13.) Pertinent to the ALJ's RFC determination, he noted Dr. Tavel's opinion that "there was no significant limitation for [Plaintiff's] ability to do light work." (*Id.* at 5613.) The ALJ further explained that Dr. Tavel's "opinion that the claimant had a light RFC with limitations was considered and accommodated in the above light

13

RFC." (*Id.*) The Court finds no errors in the ALJ's assessment of Dr. Tavel's opinions that would require remand.

### F. The ALJ's Assessment of the ME's Testimony

Finally, Plaintiff devotes one paragraph to an assertion that the testimony of the new ME (Dr. Todorov) "was not informative." ([17] at 16.) As an initial matter, the Court notes that this argument is levied on the sixteenth page of Plaintiff's memorandum, and Plaintiff did not request leave to file an oversized brief. Furthermore, again, the Court need not consider skeletal arguments. *See Hernandez*, 634 F.3d at 913. Moreover, and in any event, the Court finds that the ME's testimony was in fact informative. The ME testified that Plaintiff's "impairments do not meet or equal the requirements of the listings" and he further opined on Plaintiff's specific work abilities and limitations. (R. 5613-14.) Though Plaintiff maintains that the ALJ erred in assigning great weight to the ME's opinions, Defendant is correct as a general matter that Plaintiff's "disagreement with the ALJ's conclusions is not cause for remand." ([22] at 1.) Because the ALJ's decision is predicated on substantial evidence, and because Plaintiff's arguments for remand or reversal are unavailing, the ALJ's decision must be affirmed.[3]

---

[3] Because the Court has found that Plaintiff's arguments for remand lack merit, it follows that reversal for an award of benefits would not be appropriate.

14

## **CONCLUSION**

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to reverse or remand the Commissioner's decision [17] is denied, and the Commissioner's cross-motion for summary judgment [21] is granted.

**SO ORDERED.**                     **ENTERED:**

**DATE:     December 16, 2024**           _____
                                          **HON. DANIEL P. McLAUGHLIN**
                                          **United States Magistrate Judge**

15